**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, HARTFORD UNDERWRITERS INSURANCE COMPANY, <br><br> Plaintiff, <br><br> v. <br><br> COSMED GROUP, INC. <br><br> Defendant. | Case No.: _____ |

## COMPLAINT FOR DECLARATORY JUDGMENT

NOW COMES Plaintiffs, HARTFORD FIRE INSURANCE COMPANY ("Hartford Fire"), TWIN CITY FIRE INSURANCE COMPANY ("Twin City"), HARTFORD CASUALTY INSURANCE COMPANY ("Hartford Casualty"), and HARTFORD UNDERWRITERS INSURANCE COMPANY ("Hartford Underwriters") (collectively, all Plaintiffs are referred to herein as "Hartford"), by and through its attorneys, Lewis Brisbois Bisgaard & Smith LLP, and herein submit their Complaint for Declaratory Judgment against Defendant, COSMED GROUP, INC. ("Cosmed"). In support thereof, Hartford states as follows:

### NATURE OF THE ACTION

1.      This is an insurance coverage action seeking declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure. In this action, Hartford seeks a declaration of the parties' rights and obligations under insurance policies issued by Hartford to Cosmed with respect to 207 underlying lawsuits identified in Exhibit A (collectively, the "Underlying Lawsuits").

2.      While each of the 207 Underlying Lawsuits alleges distinct injuries, the factual allegations and causes of action asserted against Cosmed are substantially similar.  An example of one of the Underlying Lawsuits is attached hereto as Exhibit B.

3.      Cosmed is named as a defendant in the Underlying Lawsuits and is a Named Insured under thirty insurance policies issued by Hartford, as described in more detail below (collectively, the "Hartford Policies").

4.      Cosmed seeks coverage for the Underlying Lawsuits under one or more of the Hartford Policies.

5.      Hartford has no obligation to defend or indemnify Cosmed in connection with the Underlying Lawsuits under any of the Hartford Policies based on one or more of the following grounds: (a) the pollution exclusions contained in each of the Hartford Policies preclude coverage for all of the Underlying Lawsuits; (b) the Underlying Lawsuits do not allege liability which falls within the "products-completed operations" hazard covered by certain of the Hartford Policies; and (c) various other terms, exclusions and/or policy provisions in the Hartford Policies.

6.      An actual and justiciable controversy exists between Cosmed and Hartford in that Hartford alleges that it has no duty to defend and/or indemnify Cosmed under the Hartford Policies with respect to the Underlying Lawsuits and, on information and belief, Cosmed disputes Hartford's position.

## THE PARTIES

7.      Plaintiff Hartford Fire is an insurance company organized and existing under the laws of the State of Connecticut, with its principal place of business located in Connecticut.

8.      Plaintiff Twin City is an insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located in Connecticut.

9.     Plaintiff Hartford Casualty is an insurance company organized and existing under the laws of the State of Indiana, with its principal place of business located in Connecticut.

10.    Plaintiff Hartford Underwriters is an insurance company organized and existing under the laws of the State of Connecticut, with its principal place of business located in Connecticut.

11.    Defendant Cosmed is Delaware corporation with its principal place of business located in Rhode Island.

## JURISDICTION AND VENUE

9.     Jurisdiction is proper in this Court, pursuant to 28 U.S.C. § 1332(a), because there is complete diversity of citizenship between Hartford, on the one hand, and Cosmed, on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs.

10.    Venue is proper in this District, pursuant to 28 U.S.C. § 1391(b), because Cosmed resides within or is otherwise subject to personal jurisdiction in this District.

## UNDERLYING ALLEGATIONS

11.    In support of the various claims asserted by the plaintiffs in the Underlying Lawsuits (the "Underlying Plaintiffs"), the complaints in the Underlying Lawsuits generally allege, in relevant part, that:

a. Cosmed conducted industrial medical sterilization operations at a plant in Waukegan, Illinois (the "Cosmed Facility");

b. Cosmed operated the Cosmed Facility between approximately 1993 and 2005;

c. Cosmed used ethylene oxide gas ("EtO") in the course of its sterilization operations at the Cosmed Facility and said EtO was released into the surrounding atmosphere during the relevant time(s) alleged;

d.  The United States Environmental Protection Agency ("EPA") modeled EtO exposure concentrations in 1996 and 1999, which revealed that Lake County (the county in which the Cosmed Facility is located) had a significantly greater EtO concentration exposure than the national average and that Lake County residents had an increased risk of cancer from EtO;

e.  Cosmed was fined $1.5 million in 2005 for Clean Air Act violations from six of its facilities, including the Cosmed Facility, which allegedly led Cosmed to sell the Cosmed Facility;

f.  EPA data indicates that, during the period when Cosmed operated the Cosmed Facility, EtO emissions from the Cosmed Facility consistently exceeded 4,000 pounds of EtO between 1996 and 2001, including approximately 17,000 pounds of EtO between 1999 and 2001;

g.  The majority of EtO emissions from the Cosmed Facility were from "fugitive emissions" or unregulated escapes of EtO through leaky seals, operator error, or old or malfunctioning equipment; and

h.  The plaintiffs in the Underlying Lawsuits (the "Underlying Plaintiffs") purportedly inhaled the air contaminated with EtO while residing and/or employed in areas neighboring and around the Cosmed Facility.

12.  In the Underlying Lawsuits, the Underlying Plaintiffs each allege that they have suffered bodily injury and/or disease, including various forms of cancer, due to their alleged exposure to the EtO-contaminated air emitted from the Cosmed Facility.

13.  In the Underlying Lawsuits, the Underlying Plaintiffs assert various claims and causes of action against Cosmed, including, but not limited to, negligence, public nuisance,

ultrahazardous activity/strict liability, and willful and wanton conduct, and seek damages in connection therewith.

## **THE HARTFORD POLICIES**

14.    Hartford Fire and Hartford Underwriters issued the following commercial general liability policies to Cosmed as the Named Insured, which are the subject of this action (together, the "CGL Policies"):

| Policy Number | Policy Period |
|---|---|
| 02 UEN UF5971 | 10/01/04 - 10/01/05 ("2004 CGL Policy") |
| 02 UEN UF5971 | 10/01/05 - 10/01/06 ("2005 CGL Policy") |
| 02 UEN UF5971 | 10/01/06 - 10/01/07 ("2006 CGL Policy") |
| 02 UEN UF5971 | 10/01/07 - 10/01/08 ("2007 CGL Policy") |
| 02 UEN UF5971 | 10/01/08 - 10/01/09 ("2008 CGL Policy") |
| 02 UEN UF5971 | 10/01/09 - 10/01/10 ("2009 CGL Policy") |
| 02 UEN UF5971 | 10/01/10 - 11/01/11 ("2010 CGL Policy") |

15.    Twin City issued the following products-completed operations policies to Cosmed as the Named Insured, which are the subject of this action (together, the "PCOH Policies"):

| Policy Number | Policy Period |
|---|---|
| 02 CES OA9870 | 10/18/06 - 10/01/07 ("2006 PCOH Policy") |
| 02 CES OA9870 | 10/01/07 - 10/01/08 ("2007 PCOH Policy") |
| 02 CES OA9870 | 10/01/08 - 10/01/09 ("2008 PCOH Policy") |
| 02 CES OA9870 | 10/01/09 - 10/01/10 ("2009 PCOH Policy") |
| 02 CES OA9870 | 10/01/10 - 11/01/11 ("2010 PCOH Policy") |
| 02 CES OA9870 | 11/01/11 - 11/01/12 ("2011 PCOH Policy") |
| 02 CES OA9870 | 11/01/12 - 11/01/13 ("2012 PCOH Policy") |
| 02 CES OA9870 | 11/01/13 - 11/01/14 ("2013 PCOH Policy") |
| 02 CES OA9870 | 11/01/14 - 11/01/15 ("2014 PCOH Policy") |
| 02 CES OA9870 | 11/01/15 - 11/01/16 ("2015 PCOH Policy") |

16.    Hartford Casualty and Twin City issued the following umbrella liability policies to Cosmed as the Named Insured, which are the subject of this action (together, the "Umbrella Policies"):

| Policy Number | Policy Period |
|---|---|
| 02 RHU UF5567 | 10/01/04 - 10/01/05 ("2004 Umbrella Policy") |
| 02 RHU UF5567 | 10/01/05 - 10/01/06 ("2005 Umbrella Policy") |

| | |
|---|---|
| 02 RHU UF5567 | 10/01/06 - 10/18/06 ("2006A Umbrella Policy") |
| 02 HU SL8675 | 10/18/06 - 10/01/07 ("2006B Umbrella Policy") |
| 02 HU SL8675 | 10/01/07 - 10/01/08 ("2007 Umbrella Policy") |
| 02 HU SL8675 | 10/01/08 - 10/01/09 ("2008 Umbrella Policy") |
| 02 HU SL8675 | 10/01/09 - 10/01/10 ("2009 Umbrella Policy") |
| 02 HU SL8675 | 10/01/10 - 11/01/11 ("2010 Umbrella Policy") |
| 02 HU SL8675 | 11/01/11 - 11/01/12 ("2011 Umbrella Policy") |
| 02 HU SL8675 | 11/01/12 - 11/01/13 ("2012 Umbrella Policy") |
| 02 HU SL8675 | 11/01/13 - 11/01/14 ("2013 Umbrella Policy") |
| 02 HU SL8675 | 11/01/14 - 11/01/15 ("2014 Umbrella Policy") |
| 02 HU SL8675 | 11/01/15 - 11/01/16 ("2015 Umbrella Policy") |

## **THE CGL POLICIES**

17.    Each of the CGL Policies provides limits of liability of $1 million each occurrence

and $2 million in the general aggregate (other than products-completed operations).

18.    The CGL Policies each provide, in part, the following:

**SECTION I – COVERAGES**

**COVERAGE  A  BODILY  INJURY  AND  PROPERTY  DAMAGE LIABILITY**

**1.  Insuring Agreement**

    **a.**  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply …

***

    **b.**  This insurance applies to "bodily injury" and "property damage" only if:

        **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

        **(2)** The "bodily injury" or "property damage" occurs during the policy period; …

19.    The 2004-2006 CGL Policies contain the following exclusion:

**f. Pollution**

**(1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured.…

\*\*\*

20.    The 2007-2010 CGL Policies each contain an endorsement deleting Exclusion f., titled "Pollution," and replacing it with the following exclusion:

**f. (1)** "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**(a)** At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured;

\*\*\*

21.    Together, the pollution exclusions identified in the two preceding paragraphs (19 and 20) are referred to in this complaint as the "CGL Pollution Exclusions."

22.    The 2004-2006 CGL Policies contain the following definitions:

**SECTION V – DEFINITIONS**

**5.**    "Bodily injury" means bodily injury, sickness or disease sustained by a person, including mental anguish or death resulting from any of these at any time.

\*\*\*

**13.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**16.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

23.    The 2007-2010 CGL Policies contain the following definitions:

**SECTION V – DEFINITIONS**

**5.** "Bodily injury" means physical:

    **a.** Injury;
    **b.** Sickness; or
    **c.** Disease

sustained by a person and, if arising out of any of the above, mental anguish or death at any time.

       \*\*\*

**16.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

       \*\*\*

**18.** "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

## THE PCOH POLICIES

24.    Each of the PCOH Policies provides limits of liability of $1 million each occurrence and $2 million in the aggregate.

25.    The PCOH Policies provide, in part, the following:

**SECTION I – COVERAGES PRODUCTS/COMPLETED OPERATIONS**

**BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" included within the "products-completed operations hazard" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply …

       \*\*\*

  **b.** This insurance applies to "bodily injury" and "property damage" only if:

   **(1)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; [and]

   **(2)** The "bodily injury" or "property damage" occurs during the policy period; …

26. The PCOH Policies contain the same or substantially the same following conditions and definitions:

### SECTION IV – CONDITIONS

***

**4. Other Insurance**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

If this insurance is excess, we will have no duty under this Coverage Part to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we will be entitled to the insured's rights against all those other insurers.

If this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:

(a) The total amount that all such other insurance would pay for damages in the absence of this insurance; and

(b) The total of all deductible and self-insured amounts under all that other insurance.

***

### SECTION V – DEFINITIONS

***

**3.** "Bodily injury" means physical:

 **a.** Injury;
 **b.** Sickness; or
 **c.** Disease

sustained by a person and, if arising out of the above, mental anguish or death resulting from any of these at any time.

\*\*\*

**12.** "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\*\*\*

**13.** "Products-completed operations hazard":

    **a.** Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)** Products that are still in your physical possession; or

        **(2)** Work that has not yet been completed or abandoned. However, "your work" will be deemed completed at the earliest of the following times:

            **(a)** When all of the work called for in your contract has been completed.

            **(b)** When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)** When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

    **b.** Does not include "bodily injury" or "property damage" arising out of:

        **(1)** The transportation of property, unless the injury or damage arises out of a condition in or on a vehicle not owned or operated by you, and that condition was created by the "loading or unloading" of that vehicle by any insured;

        **(2)** The existence of tools, uninstalled equipment or abandoned or unused materials; or

**(3)** Products or operations for which the classification, listed in the Declarations or in a policy schedule, states that products-completed operations are included.

\*\*\*

**17.** "Your product":

    **a.** Means:

        **(1)** Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)** You;
            **(b)** Others trading under your name; or
            **(c)** A person or organization whose business or assets you have acquired; and

        **(2)** Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product"; and

        **(2)** The providing of or failure to provide warnings or instructions.

    **c.** Does not include vending machines or other property rented to or located for the use of others but not sold.

**18.** "Your work":

    **a.** Means:

        **(1)** Work or operations performed by you or on your behalf; and

        **(2)** Materials, parts or equipment furnished in connection with such work or operations.

    **b.** Includes:

        **(1)** Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

>> (2)   The providing of or failure to provide warnings or instructions.

### THE UMBRELLA POLICIES

27.     Each of the Umbrella Policies provides limits of liability of $5 million each occurrence, $5 million in the general aggregate (other than products-completed operations), and $5 million in the product-completed operations aggregate.

28.     The Umbrella Policies identify each of the following general liability policies in their schedule of underlying insurance policies:

| Umbrella Policy | General Liability Policy Identified in Schedule of Underlying Insurance |
|---|---|
| 2004 Umbrella Policy | 2004 GL Policy |
| 2005 Umbrella Policy | 2005 GL Policy |
| 2006A Umbrella Policy | 2006 GL Policy |
| 2006B Umbrella Policy | 2006 GL Policy |
| 2007 Umbrella Policy | 2007 GL Policy |
| 2008 Umbrella Policy | 2008 GL Policy |
| 2009 Umbrella Policy | 2009 GL Policy |
| 2010 Umbrella Policy | 2010 GL Policy |
| 2011 Umbrella Policy | Travelers No. 630-8A046090 |
| 2012 Umbrella Policy | Travelers No. 630-8A046090 |
| 2013 Umbrella Policy | Travelers No. 630-8A046090 |
| 2014 Umbrella Policy | Travelers No. 630-8A046090 |
| 2015 Umbrella Policy | Travelers No. Y6308A046090TIL14 |

29.     The 2004-2006A Umbrella Policies provide the following same or substantially the same policy provisions:

**SECTION I – COVERAGES**

**INSURING AGREEMENTS**

**A. Umbrella Liability Insurance**

>> **1.** We will pay those sums that the "insured" becomes legally obligated to pay as "damages" in excess of the "underlying insurance", or of the "self-insured retention" when no "underlying insurance" applies, because of "bodily injury," "property damage", or "personal and

advertising injury" to which this insurance applies caused by an "occurrence".

**2.** This insurance applies to "bodily injury", "property damage" or "personal and advertising injury" only if:

    **a.** The "bodily injury", "property damage" or "personal and advertising injury" occurs during the "policy period";

***

**B. Exclusions**

This policy does not apply to:

**1. Pollution**

    Any obligation:

    **a.** To pay for the cost of investigation, defense or settlement of any claim or "suit" against any "insured" alleging actual or threatened injury or damage of any nature or kind to persons or property which arises out of or would not have occurred but for the pollution hazard; or

    **b.** To pay any "damages", judgments, settlements, loss, costs or expenses that may be awarded or incurred:

        i.    By reason of any such claim or "suit" or any such injury or damage; or

        ii.    In complying with any action authorized by law and relating to such injury or damage.

As used in this exclusion, pollution hazard means an actual exposure or threat of exposure to the corrosive, toxic or other harmful properties of any solid, liquid, gaseous or thermal:

    **a.** Pollutants;
    **b.** Contaminants;
    **c.** Irritants; or
    **d.** Toxic substances;

Including:

Smoke;
Vapors;
Soot;

Fumes;
Acids;
Alkalis;
Chemicals, and

Waste materials consisting of or containing any of the foregoing. Waste includes materials to be recycled, reconditioned or reclaimed.

***

## SECTION VI – CONDITIONS

***

### G.  Other Insurance

This policy shall apply in excess of all "underlying insurance" whether or not valid and collectible. It shall also apply in excess of other valid and collectible insurance (except other insurance purchased specifically to apply in excess of this insurance) which also applies to any loss for which insurance is provided by this policy.

These excess provisions apply, whether such other insurance is stated to be:

1. Primary;
2. Contributing;
3. Excess; or
4. Contingent.

***

## SECTION VII – DEFINITIONS

**Except as otherwise provided in this section or amended by endorsement, the words and phrases that appear in quotation marks within this policy shall follow the definitions of the applicable "underlying insurance" policy.**

***

**"Damages"** include prejudgment interest awarded against the "insured" on that part of the judgment we pay.

"Damages" do not include:

1. Fines;
2. Penalties; or
3. Damages for which insurance is prohibited by the law applicable to the construction of this policy.

Subject to the foregoing, "damages" include damages for any of the following which result at any time from "bodily injury" to which this policy applies:

14

1. Death;
2. Mental anguish;
3. Shock;
4. Disability; or
5. Care and loss of services or consortium.

\*\*\*

**"Occurrence"** means

1. With respect to "bodily injury" or "property damage": an accident, including continuous or repeated exposure to substantially the same general harmful conditions, and …

\*\*\*

**"Underlying insurance"** means the insurance policies listed in the Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in the Schedule of Underlying Insurance Policies. The limit of "underlying insurance" includes:

1. Any deductible amount;
2. Any participation of any "insured"; and
3. Any "self-insured retention" above or beneath any such policy;

Less the amount, if any, by which the aggregate limit of such insurance has been reduced by any payment relating to any act, error, omission, injury, damage or offense for which insurance is provided by this policy, including Medical Payments Coverage as described in the "underlying insurance." …

\*\*\*

30.     The 2006B-2015 Umbrella Policies provide the following same or substantially the same policy provisions:

**SECTION I – COVERAGES**

**Bodily Injury, Property Damage, Personal and Advertising Liability.**

1. **Insuring Agreement.**

   a. We will pay on behalf of the insured those sums that the insured shall become legally obligated to pay as damages because of "bodily injury," "property damage", or "personal and advertising injury" to which this insurance applies:

(1) But only to the extent that such damages are in excess of the total limits of "underlying insurance" that have been reduced or exhausted solely by payment of that portion of judgments or settlements to which this policy applies; or

(2) To which no "underlying insurance" applies.  But you agree to reimburse us for any such amount to the extent included under the "self-insured retention".

***

c. This policy applies to "bodily injury", "property damage" and "personal and advertising injury" only if:

(1) (a) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(b) The "bodily injury" or "property damage" occurs during the "policy period"; or …

***

**2.  Exclusions.**

This policy does not apply to:

***

f.  Pollution

(1) Any injury or damage arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants:"

(a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured; …

***

**SECTION IV – CONDITIONS**

***

**10.     Other Insurance.**

This insurance is excess over any other insurance, whether primary, excess, contingent or on any other basis, except when purchased specifically to apply in excess of this insurance.

***

**SECTION V – DEFINITIONS**

***

6. "Bodily injury" means physical:

    a. Injury;
    b. Sickness; or
    c. Disease

sustained by a person and, if arising out of the above, mental anguish or death at any time.

***

21. "Occurrence" means, with respect to "bodily injury" or "property damage", an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

***

25. "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste.  Waste includes materials to be recycled, reconditioned or reclaimed.

***

31. "Underlying insurance" means the insurance policies listed in the Extension Schedule of Underlying Insurance Policies, including any renewals or replacements thereof, which provide the underlying coverages and limits stated in such Extension Schedule. A limit of "underlying insurance" includes any deductible amount, any participation of the insured, or any amount retained by the insured above or beneath any such policy, less the amount, if any, by which the aggregate limit of such insurance has been reduced solely by payment of that portion of judgments or settlements to which this policy applies, taking place during the "policy period" of this policy. The coverage and limits of such "underlying insurance" policies and any such deductible amount, participation or any amount retained by the insured shall be deemed applicable regardless of (1) any defense which any underlying insurer may assert because of any insured's failure to comply with any condition in its policy or (2) the actual or alleged insolvency or financial impairment of any underlying insurer or any insured. The risk of insolvency or financial impairment of any underlying insurer or any insured is borne by insureds or others and not by us.

***

31. The pollution exclusions excerpted in paragraphs 29 (Section I.B.1.) and 30 (Section I.2.f.) above are referred to in this complaint as the "Umbrella Pollution Exclusions."

17

## COUNT I
### (Declaratory Judgment – CGL Policies – CGL Pollution Exclusions Bar Coverage for All Underlying Lawsuits)

32.     Hartford hereby incorporates Paragraphs 1–31 of this Complaint as if fully set forth herein.

33.     The CGL Pollution Exclusions in each of the CGL Policies bar coverage for "bodily injury" "arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of 'pollutants' … [a]t or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured…."

34.     The CGL Policies define "pollutants" as "any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

35.     The Underlying Lawsuits allege that: EtO is a dangerous, toxic, and mutagenic gas that has been declared a Group 1 human carcinogen by the World Health Organization since 1994; EtO has been declared by the EPA to be a substance that can damage DNA; and EtO was included on the original list of hazardous air pollutants identified in the 1990 amendments to the Clean Air Act.

36.     EtO is a "pollutant," as that term is defined by the CGL Policies.

37.     The Underlying Lawsuits allege that EtO has been discharged, released and/or otherwise escaped from the Cosmed Facility into the surrounding atmosphere.

38.     The Underlying Lawsuits allege that Cosmed Facility was owned and/or operated by Cosmed during the relevant time period(s).

39.    The Underlying Lawsuits allege that the various Underlying Plaintiffs have suffered "bodily injury" as the result of their exposure to said EtO emissions from the Cosmed Facility.

40.    As a result, the CGL Pollution Exclusions in each of the CGL Policies apply to bar coverage for all "bodily injury" alleged in the Underlying Lawsuits arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of a "pollutant" (EtO) from the Cosmed Facility into the surrounding atmosphere.

41.    An actual controversy exists between Hartford and Cosmed concerning whether Cosmed is entitled to coverage, defense and/or indemnity under the CGL Policies for the claims asserted in the Underlying Lawsuits.

**WHEREFORE,** for the reasons set forth above, Plaintiffs, HARTFORD FIRE INSURANCE COMPANY and HARTFORD UNDERWRITERS INSURANCE COMPANY, respectfully pray for judgment as follows:

A.    Declaring that Hartford Fire and Hartford Underwriters have no duty or obligation under the CGL Policies to defend Cosmed or to pay for or reimburse any defense costs Cosmed has incurred or will incur in connection with the Underlying Lawsuits identified on Exhibit A;

B.    Declaring that Hartford Fire and Hartford Underwriters have no duty or obligation under the CGL Policies to indemnify Cosmed with respect to the Underlying Lawsuits identified on Exhibit A; and

C.    Awarding such other and further relief as the Court deems just, equitable, and proper.

## COUNT II
### (Declaratory Judgment – PCOH Policies – No Products-Completed Operations Liability Alleged in the Underlying Lawsuits and Pollution Exclusions Apply to Bar Coverage)

42.     Hartford hereby incorporates Paragraphs 1–41 of this Complaint as if fully set forth herein.

43.     The Insuring Agreements of the PCOH Policies state in part that they only provide coverage to Cosmed for "those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' … included within the "products-completed operations hazard" to which policy insurance applies.

44.     The Hartford Policies define "products-completed operations hazard," in part, as "bodily injury" taking place away from premises the insured owns or rents, and which arises out of the insured's work or product, but only if that product has left insured's physical possession or the work has been completed or abandoned.  The definition of "products-completed operations hazard" also provides that the insured's work is completed when all work called for in the insured's contract has been completed, all work at a job site has been completed, or that part of work at a job site has been put to its intended use by another person who is not working on the same project.

45.     The complaints in the Underlying Lawsuits do not allege that the plaintiff(s) suffered any "bodily injury" which arose out of a product that Cosmed no longer possesses, or which arose out of Cosmed's work that has been completed or abandoned.

46.     The Underlying Lawsuits therefore do not allege any "bodily injury" included within the "products-completed operations hazard" within the meaning of the PCOH Policies.

47.     In the alternative, each of the PCOH Policies also contains a total pollution exclusion which separately applies to bar coverage for "bodily injury" which would not have

occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

48.     As noted in Count I, the Underlying Lawsuits allege that EtO is a pollutant which was released into the environment, purportedly causing the bodily injuries for which they seek compensation.

49.     As a result, and only to the extent that there is any "bodily injury" alleged in the Underlying Lawsuits which falls within the "products-completed operations hazard," coverage under the PCOH Policies for the Underlying Lawsuits is barred under the total pollution exclusions contained therein.

50.     Therefore, Hartford has no duty to defend or indemnify Cosmed against the Underlying Lawsuits under the PCOH Policies.

51.     An actual controversy exists between Hartford and Cosmed concerning whether Cosmed is entitled to coverage, defense and/or indemnity under the PCOH Policies for the claims asserted in the Underlying Lawsuits.

**WHEREFORE,** for the reasons set forth above, Plaintiff, TWIN CITY FIRE INSURANCE COMPANY, respectfully prays for judgment as follows:

A.  Declaring that Twin City has no duty or obligation under the PCOH Policies to defend Cosmed or to pay for or reimburse any defense costs Cosmed has incurred or will incur in connection with the Underlying Lawsuits identified on Exhibit A;

B.  Declaring that Twin City has no duty or obligation under the PCOH Policies to indemnify Cosmed with respect to the Underlying Lawsuits identified on Exhibit A; and

C. Awarding such other and further relief as the Court deems just, equitable, and

proper.

## COUNT III
### (Declaratory Judgment – Umbrella Policies – Umbrella Pollution Exclusions Bar Coverage for All Underlying Lawsuits)

52.     Hartford hereby incorporates Paragraphs 1–51 of this Complaint as if fully set forth herein.

53.     The Umbrella Pollution Exclusions in each of the Umbrella Policies (as excerpted above) bar coverage for any obligations (defense or indemnity) in which an injury arises out of the exposure to or release of "pollutants."

54.     As noted in Count I, EtO is a "pollutant," and the Underlying Lawsuits allege damages due to the release of and exposure to EtO gases from the Cosmed Facility during the time in which Cosmed owned or operated said facility.

55.     As a result, the Umbrella Pollution Exclusions in each of the Umbrella Policies apply to bar coverage for all of the Underlying Lawsuits.

56.     An actual controversy exists between Hartford and Cosmed concerning whether Cosmed is entitled to coverage, defense and/or indemnity under the Umbrella Policies for the claims asserted in the Underlying Lawsuits.

**WHEREFORE,** for the reasons set forth above, Plaintiffs, HARTFORD CASUALTY INSURANCE COMPANY and TWIN CITY FIRE INSURANCE COMPANY, respectfully pray for judgment as follows:

A. Declaring that Hartford Casualty and Twin City have no duty or obligation under

the Umbrella Policies to defend Cosmed or to pay for or reimburse any defense

costs Cosmed has incurred or will incur in connection with the Underlying Lawsuits identified on Exhibit A;

B.  Declaring that Hartford Casualty and Twin City have no duty or obligation under the Umbrella Policies to indemnify Cosmed with respect to the Underlying Lawsuits identified on Exhibit A; and

C.  Awarding such other and further relief as the Court deems just, equitable, and proper.

## COUNT IV
### (Other Bases for Non-Coverage)

57.  Hartford hereby incorporates Paragraphs 1–56 of this Complaint as if fully set forth herein.

58.  There is no coverage under any of the Hartford Policies to the extent that the Underlying Lawsuits seek damages for "bodily injury" that was not caused by an "occurrence."

59.  There is no coverage under each of the Hartford Policies for any "bodily injury" which took place outside of the policy periods of those Hartford Policies.

60.  There is no coverage under the Hartford Policies to the extent that Cosmed failed to notify Hartford of an "occurrence" which may result in a claim and/or failed to forward to Hartford a claim, demand or suit or any other development likely to affect Hartford's liability in a timely manner as required by the Hartford Policies.

61.  There is no coverage under the CGL Policies or the 2004-2006A Umbrella Policies with respect to damages for "bodily injury" within the "products-completed operations hazard," pursuant to products-completed operations exclusions contained therein.

62.  Coverage obligations under the PCOH Policies, if any, are subject to the Deductible Liability Insurance endorsements contained therein.

63.    To the extent that the Court determines that the PCOH or the Umbrella Policies provide coverage for the Underlying Lawsuits, any coverage provided to Cosmed under same is excess over any other insurance (except when purchased specifically to apply in excess of those PCOH or Umbrella Policies) and, therefore, Hartford's obligations under those policies may not arise or exist at this time.

64.    There is no coverage under one or more of the Hartford Policies to the extent that the Underlying Lawsuits seek damages for "bodily injury" that was known, in whole or in part, prior to the inception date of any one or more of the Hartford Policies in accordance with the terms of the insuring agreements and all relevant endorsements contained therein.

65.    There is no coverage under the Hartford Policies to the extent that the Underlying Lawsuits seek damages for "bodily injury" that was expected or intended from the standpoint of Cosmed pursuant to the expected or intended exclusions contained therein.

66.    There is no coverage under the Hartford Policies to the extent that the injuries claimed in the Underlying Lawsuits were a known loss or a loss in progress.

67.    Hartford has no liability under the Hartford Policies to the extent that Cosmed made any voluntary payment, assumed any obligation, and/or incurred any expense without Hartford's consent.

68.    There is no coverage under the Hartford Policies to the extent that Cosmed failed to mitigate, minimize, or avoid any damage that it allegedly did or will sustain in connection with the claims for which coverage is sought.

69.    To the extent Cosmed has failed to perform all of its obligations and duties and/or comply with all conditions precedent and subsequent under the Hartford Policies, coverage, if any, is barred.

70.     To the extent that the Underlying Lawsuits seek punitive damages or recovery for an award of punitive or exemplary damages, there is no coverage under the Hartford Policies insurance coverage if such relief is contrary to law, public policy or the terms and conditions of the Hartford Policies.

71.     Coverage, if any, under the Hartford Policies is subject to the stated limits of liability in each Hartford Policy.

72.     Hartford reserves the right to seek to amend this Complaint and to assert additional defenses as additional information becomes available.

**WHEREFORE,** for the reasons set forth above, Plaintiffs, HARTFORD FIRE INSURANCE COMPANY, TWIN CITY FIRE INSURANCE COMPANY, HARTFORD CASUALTY INSURANCE COMPANY, and HARTFORD UNDERWRITERS INSURANCE COMPANY, respectfully pray for judgment as follows:

A.  Declaring that Hartford has no duty or obligation under the Hartford Policies to defend Cosmed or to pay for or reimburse any defense costs Cosmed has incurred or will incur in connection with the Underlying Lawsuits identified on Exhibit A;

B.  Declaring that Hartford has no duty or obligation under the Hartford Policies to indemnify Cosmed with respect to the Underlying Lawsuits identified on Exhibit A; and

C.  Awarding such other and further relief as the Court deems just, equitable, and proper.

Dated: 2/26/2024

Respectfully submitted,

HARTFORD FIRE INSURANCE COMPANY,
TWIN CITY FIRE INSURANCE COMPANY,
HARTFORD CASUALTY INSURANCE
COMPANY, and HARTFORD
UNDERWRITERS INSURANCE COMPANY

By: */s/ Michael J. Marcello*
       Michael Marcello (#5221)
       LEWIS BRISBOIS BISGAARD & SMITH
       LLP
       One Citizens Plaza
       Suite 1120
       Providence, RI 02903
       (401) 406-3317
       michael.marcello@lewisbrisbois.com